**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KAREN SBRIGLIO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BIOVERATIV INC., BRIAN S. POSNER, JOHN G. COX, ALEXANDER J. DENNER, GENO J. GERMANO, LOUIS J. PAGLIA, ANNA PROTOPAPAS, SANOFI, S.A., and BLINK ACQUISITION CORP., <br><br> Defendants. | ) ) ) ) ) ) Case No. 1:18-cv-10291 ) ) JURY TRIAL DEMANDED ) ) CLASS ACTION ) ) ) ) ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on January 22, 2018 (the "Proposed Transaction"), pursuant to which Bioverativ Inc. ("Bioverativ" or the "Company") will be acquired by Sanofi, S.A. ("Parent") and Blink Acquisition Corp. ("Merger Sub," and together with Parent, "Sanofi").

2. On January 21, 2018, Bioverativ's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Sanofi. Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer"), currently set to expire at midnight, Eastern Time, on March 7, 2018, to acquire all of Bioverativ's outstanding common stock for $105.00 in

cash for each share of Bioverativ common stock. If the Tender Offer is completed, Merger Sub will be merged with and into the Company, and the Company will continue as the surviving corporation as a wholly owned subsidiary of Parent.

3. On February 8, 2018, defendants filed a Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Bioverativ common stock.

9. Defendant Bioverativ is a Delaware corporation and maintains its principal executive offices at 225 Second Avenue, Waltham, Massachusetts 02451. Bioverativ's common stock is traded on the NasdaqGS under the ticker symbol "BIVV." Bioverativ is a party to the Merger Agreement.

10. Defendant Brian S. Posner ("Posner") is Chairman of the Board of Bioverativ.

11. Defendant John G. Cox ("Cox") is a director and the Chief Executive Officer ("CEO") of Bioverativ.

12. Defendant Alexander J. Denner, Ph.D. ("Denner") is a director of Bioverativ.

13. Defendant Geno J. Germano ("Germano") is a director of Bioverativ.

14. Defendant Louis J. Paglia ("Paglia") is a director of Bioverativ.

15. Defendant Anna Protopapas ("Protopapas") is a director of Bioverativ.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17. Defendant Parent is a French *société anonyme* and a party to the Merger Agreement.

18. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Bioverativ (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable. As of January 19, 2018, there were approximately 108,223,091 shares of Bioverativ common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

26.     Bioverativ was formed to hold the hemophilia business of Biogen Inc. ("Biogen"). On February 1, 2017, the Company became an independent, publicly traded company when it separated from Biogen as a result of a pro rata dividend distribution of all the outstanding shares of common stock of the Company to Biogen stockholders (the "Spin-Off").

27.     Bioverativ is a global biopharmaceutical company focused on the discovery, research, development, and commercialization of innovative therapies for the treatment of rare blood diseases including hemophilia. The Company's strategy is to lead in hemophilia, build a complement disease franchise, and transform the treatment of hemoglobinopathies.

28.     The Company has two marketed products, ELOCTATE and ALPROLIX, extended half-life clotting-factor therapies for the treatment of hemophilia A and hemophilia B, respectively. These therapies, when originally introduced in 2014, were the first major advancements in the treatment of hemophilia A and B in nearly two decades. Bioverativ currently markets its products primarily in the United States, Japan, Canada, and Australia, and its collaboration partner, Swedish Orphan Biovitrum AB (publ) (Sobi), markets the products primarily in the European Union. The Company has also made it a priority to expand into additional geographic markets, with a primary focus on certain countries in Latin America.

29.     Bioverativ's new product development for the treatment of hemophilia includes discovery, preclinical and clinical programs studying next generation extended half-life hemophilia product candidates, gene therapies for both hemophilia A and B, and non-factor products to treat hemophilia leveraging mimetic bi-specific antibody technology and a novel bicyclic peptide product platform.

30. The Company also planned to build a complement disease franchise with its initial focus on developing a treatment for cold agglutinin disease. Bioverativ's efforts in this therapeutic area are initially focused on advancing the development of BIVV009, a first-in-class monoclonal antibody for cold agglutinin disease in Phase 3 trials, which Bioverativ obtained through the acquisition of True North Therapeutics in June 2017.

31. Finally, Bioverativ has early and research-stage programs for the treatment of hemoglobinopathies, including gene-edited cell therapies for the treatment of transfusion-dependent beta-thalassemia and sickle cell disease and several discovery programs seeking to target the root cause of sickle cell disease.

32. On January 21, 2018, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by Sanofi. Pursuant to the Merger Agreement, Merger Sub commenced the Tender Offer on February 7, 2018 to acquire all of Bioverativ's outstanding common stock for $105.00 in cash for each share of Bioverativ common stock.

33. The Tender Offer is set to expire at midnight, Eastern Time, on March 7, 2018. If the Tender Offer is successfully completed, Merger Sub will be merged with and into the Company, and the Company will continue as the surviving corporation as a wholly owned subsidiary of Parent.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

34. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

35. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

36. The Solicitation Statement omits material information regarding Bioverativ's financial projections and the valuation analyses performed by Bioverativ's financial advisors in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan") and Guggenheim Securities, LLC ("Guggenheim").

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. The Solicitation Statement indicates that, on November 21, 2017, Bioverativ's management provided the Board and its financial advisors with the Company's projections, but that management presented the Board with "updated projections" on January 19, 2018, *just two days* before Bioverativ and Sanofi entered into the Merger Agreement. These updated projections, some of which were disclosed in the Solicitation Statement, apparently were relied upon by J.P. Morgan and Guggenheim to perform their valuation analyses. The Solicitation Statement, however, fails to (but must) disclose the Company's projections as presented to the Board on November 21, 2017, as well as the reason Bioverativ's management and Board determined to revise the Company's projections. Stockholders are entitled to know whether Company management revised Bioverativ's projections downward (and if so, the reason for doing so), which would have the effect of depressing the Company's implied values in the bankers' valuation analyses and make the Proposed Transaction appear fair.

39. Further, the Solicitation Statement fails to disclose: (i) the Company's projections based on each of the Company's products and product candidates; (ii) Company management's assumptions regarding the probability of success of the products currently under development by the Company; and (iii) quantification of the probabilities of achieving regulatory success and/or commercial success with its products.

40. Additionally, the Solicitation Statement discloses certain projections of Bioverativ for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA, Adjusted EPS, and Unlevered Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

41. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Solicitation Statement that, among other things, "**Non-GAAP financial measures should not be considered as an alternative to operating income or net income as measures of operating performance, or as an alternative to cash flows as a measure of liquidity**." (emphasis in original). As such, stockholders are entitled to the line item projections used to calculate Bioverativ's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

42. With respect to J.P. Morgan's Sum-of-the-Parts and WholeCo Discounted Cash Flow Analyses, the Solicitation Statement fails to disclose: (i) the specific numerical inputs and assumptions underlying the discount rate range of 8.25% to 10.25% calculated and used by J.P.

Morgan in its analyses; and (ii) the terminal exit multiples implied by J.P. Morgan's analyses.

43. With respect to Guggenheim's Sum-of-the-Parts and Going-Concern Discounted Cash Flow Analyses, the Solicitation Statement fails to disclose: (i) the specific numerical inputs and assumptions underlying the discount rate range of 8.5% to 10.5% calculated and used by Guggenheim in its analyses; and (ii) the terminal exit multiples implied by Guggenheim's analyses.

44. With respect to Guggenheim's Selected Precedent Merger and Acquisition Transactions Analysis and Selected Publicly Traded Companies Analysis, the Solicitation Statement is materially misleading in that it purports to show the "high" multiples observed by Guggenheim in its analyses. But, in actuality, there are higher multiples of the selected transactions and companies, as reflected in J.P. Morgan's similar analyses that subjectively excluded certain higher multiples as "not meaningful."

45. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) Background of the Offer and Merger; (ii) Certain Unaudited Prospective Financial Information; and (iii) Opinions of Financial Advisors.

46. The Solicitation Statement omits material information relating to potential conflicts of interest of Guggenheim. Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of interest.

47. The Solicitation Statement states that "Guggenheim Securities acted as a financial advisor to Biogen in connection with the Spin-Off, for which Guggenheim Securities received

agreed upon compensation," but the Solicitation Statement fails to disclose the amount of compensation that Guggenheim earned in connection with those services.

48. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) Background of the Offer and Merger; and (ii) Opinions of Financial Advisors.

49. The Solicitation Statement omits material information regarding potential conflicts of interest of the Company's executive officers. Specifically, the Solicitation Statement fails to disclose whether any representatives of Sanofi have made any overtures to any of Bioverativ's executive officers or directors regarding post-merger employing or directorships during the negotiations leading to the execution of the Merger Agreement. To the extent that any such overtures have occurred, the Solicitation Statement must fully disclose the nature, timing, and substance of those overtures. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) Background of the Offer and Merger; and (ii) Conflicts of Interest.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Bioverativ's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

54. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

55. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

56. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

57. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

58. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

59. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

60. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

61. Because of the false and misleading statements in the Solicitation Statement,

plaintiff and the Class are threatened with irreparable harm.

62.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

65.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

66.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

67.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

68.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to

the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

69. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Sanofi)

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants and Sanofi acted as controlling persons of Bioverativ within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Bioverativ and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

72. Each of the Individual Defendants and Sanofi was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were

thus directly connected with and involved in the making of the Solicitation Statement.

74. Sanofi also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

75. By virtue of the foregoing, the Individual Defendants and Sanofi violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants and Sanofi had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

77. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

78. Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: February 15, 2018      **MATORIN LAW OFFICE, LLC**

            By: *Mitchell J. Matorin*
              Mitchell J. Matorin (BBO# 649304)
              18 Grove Street, Suite 5
              Wellesley, MA 02482
              (781) 453-0100

              *Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800